1

2

3

4

5

6              IN THE UNITED STATES BANKRUPTCY COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9

10   In Re                                              Chapter 7

11   RONALD D. WOODS and                                Case No. 03-3584-SSC
     TAMARA J. WOODS,
12                                                      Adv. No. 04-01211
              Debtors.
13   _____                   MEMORANDUM
     ROBERT J. DAVIS, Chapter 7 Bankruptcy             DECISION
14   Trustee for the Estate of RONALD D.
     WOODS AND TAMARA J. WOODS,                         (Opinion to Post)
15
                        Plaintiff,
16
     v.
17
     DOUGLAS FOWLER, Receiver for
18   Imperial Homes, Inc.; IMPERIAL HOMES,
     INC.; WELLS FARGO BANK
19   WYOMING, N.A., Trustee for the W.R.
     Revocable Trust; WELLS FARGO
20   FINANCIAL WYOMING, INC.; and
     WELLS FARGO CORPORATION,
21
                        Defendants.
22

23                           **I. INTRODUCTION**

24           This matter comes before the Court on the Defendant Douglas Fowler's May 16,

25   2005 Motion for Summary Judgment.  The Plaintiff originally filed a Motion for Judgment on

26   the Pleadings on April 21, 2005.  The Defendant, Douglas Fowler as Receiver for Imperial

27   Homes, Inc. ("Fowler"),  filed a Response to the Motion for Judgment on the Pleadings and a

28   Motion for Summary Judgment on May 16, 2005.  On June 2, 2005, oral argument was held on

1 the Motion for Judgment on the Pleadings. The Court denied the Motion for Judgment on the

2 Pleadings and set June 29, 2005 as the deadline to respond to the Motion for Summary

3 Judgment. The Plaintiff never filed a response to the Motion for Summary Judgment. Instead,

4 the Plaintiff filed a Motion to Amend the Complaint on June 22, 2005. Fowler filed a Response

5 to the Motion to Amend on June 29, 2005. On July 12, 2005, oral argument was held on the

6 Motion to Amend. However, Fowler urged the Court to rule on the Motion for Summary

7 Judgment at that point because no response to the Motion for Summary Judgment had been filed.

8 The Plaintiff urged the Court to rule on the Motion to Amend before ruling on the Motion for

9 Summary Judgment. Despite the failure of the Plaintiff to file a response to the Motion for

10 Summary Judgment, the Court then allowed the Plaintiff to argue orally and present any case law

11 in support of his position to prevent the Motion for Summary Judgment from being granted. The

12 Court took the Motion for Summary Judgment under advisement. Finally, the Court granted the

13 Plaintiff's Motion to Amend. Since the Court granted the Motion to Amend, this Court's

14 decision on Fowler's Motion for Summary Judgment has become a Motion for Partial Summary

15 Judgment. Hence, the Court shall refer to Fowler's Motion as only one for partial summary

16 judgment hereinafter.

17        In this Memorandum Decision, the Court has now set forth its findings of fact and

18 conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. The issues

19 addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C.

20 §§ 1334(b) and 157(b) (West 2005).

21

22                      **II. FACTUAL BACKGROUND**

23        The facts are undisputed in this matter. Defendant Douglas Fowler, Receiver for

24 Imperial Homes, Inc. ("Fowler"), obtained a judgment in the amount of $205,186.74 against the

25 Debtor Ronald Woods ("Woods" or "Debtor") in the District Court, First Judicial District,

26 County of Laramie, State of Wyoming ("District Court"), on October 14, 2002. On November

27 22, 2002, Fowler secured a Writ of Post-Judgment Garnishment against Woods. Also on

28 November 22, 2002, the Writ of Post-Judgment Garnishment was served upon Defendant Wells

1 Fargo Bank Wyoming, N.A., Trustee for the W.R. Revocable Trust ("Wells Fargo"). On

2 December 9, 2002, Wells Fargo filed its Garnishee's Answer to Writ of Garnishment and

3 simultaneously paid over to the District Court the sum of $40,000.00, which represented the

4 Debtor's partial distributive share from the W.R. Revocable Trust. At some point thereafter, the

5 District Court paid over these monies to Fowler who continues to hold the sum of $40,000.00 in

6 trust.

7 The partial distribution to the Debtor in the sum of $40,000.00 from the W.R.

8 Revocable Trust was declared on or about June 26, 2002. The other beneficiaries of the W.R.

9 Revocable Trust, the Debtor's three siblings, received their partial distributions of $40,000.00

10 each on June 26, 2002. Wells Fargo affirmatively withheld payment to the Debtor of his partial

11 distributive share for the period from June 26, 2002 until it was paid over to the First Judicial

12 District Court, Laramie County, Wyoming, on December 9, 2002.

13 On March 5, 2003 Debtor filed for protection under Chapter 7 of the Bankruptcy

14 Code. On November 23, 2004, the Trustee filed this adversary proceeding. In Count One of the

15 complaint, the Trustee argues that the transfer of $40,000.00 from Wells Fargo Bank to the

16 District Court was a preferential transfer.

17

18 **III. DISCUSSION**

19     **A.**    **The Standard for Summary Judgment**

20 A motion for summary judgment should be granted if the movant has shown that

21 there are no genuine issues of material fact and the movant is entitled to judgment as a matter of

22 law. Fed.R.Bankr.P. 7056(c). Ruling on a motion for summary judgment necessarily implicates

23 that substantive evidentiary standard of proof which would apply at trial. Anderson v. Liberty

24 Lobby, Inc., 477 U.S. 242 at 252 (1986). A material fact is genuine if the evidence is such that a

25 reasonable jury could return a verdict in favor of the non-moving party. Id. Procedurally, "the

26 proponent of a summary judgment motion bears a heavy burden to show that there are no

27 disputed facts warranting disposition of the case on the law without trial." In re Aquaslide 'N'

28 Dive Corp., 85 B.R. 545, 547 (9th Cir. BAP 1987). Once that burden has been met, "the

1  opponent must affirmatively show that a material issue of fact remains in dispute." Frederick S.

2  Wyle P.C. v. Texaco, Inc., 764 F.2d 604, 608 (9th Cir. 1985).  The opponent may not assert the

3  existence of some alleged factual dispute between the parties. Liberty Lobby, 477 U.S. 242 at

4  252, 106 S.Ct. 2505 at 2512, 91 L.Ed.2d 202.  Instead, to demonstrate that a genuine factual

5  issue exists, the objector must produce affidavits which are based on personal knowledge, and

6  the facts set forth therein must be admissible in evidence. Aquaslide, at 547. In addition,

7  summary judgment must be used with care and restraint, Hutchinson v. United States, 677 F.2d

8  1322, 1325 (9th Cir. 1982), and is reviewed in the light most favorable to the non-moving party.

9  Hifai v. Shell Oil Co., 704 F.2d 1425, 1428 (9th Cir. 1983).

10

11  **B.  Preferential Transfer Pursuant to 11 U.S.C. § 547(b)**

12  Pursuant to 11 U.S.C. §547(b):

13  [t]he Trustee may avoid any transfer of an interest of the debtor in
    property -
14  (1)  to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the
15  debtor before such transfer was made;
    (3) made while the debtor was insolvent;
16  (4) made -
    (A) on or within 90 days before the filing date of
17  the petition; and
    (5) that enables such creditor to receive more than such
18  creditor would receive if -
    (A) the case were a case under chapter 7 of this
19  title;
    (B) the transfer had not been made; and
20  (C) such creditor received payment of such debt
    to the extent provided by the provisions of this title.
21
    In this matter, the Trustee argues that the transfer was made when Wells Fargo paid the District
22
    Court the sum of $40,000.00 on December 9, 2002.  Because the Debtor filed his Chapter 7
23
    petition on March 5, 2003, the Wells Fargo's payment to the Court would be 89 days preceding
24
    the filing of the petition.  Fowler alleges that the transfer actually occurred on November 22,
25
    2002, the date that the Writ of Post-Judgment Garnishment was served on Wells Fargo.  This
26
    would place the transfer outside the 90-day window of §547.  Therefore, the dispositive issue in
27
    this matter is whether Wells Fargo made a transfer within the 90-day window as defined in §547.
28

- 4 -

1         However, to determine when a transfer is made or perfected, it is also important

2  to review other subsections of §547.  For purposes of said Section, a transfer is made "at the time

3  such transfer takes effect between the transferor and the transferee, if such transfer is perfected

4  at, or within 10 days after, such time . . ."  11 U.S.C. §547(e)(2)(A).  As to perfection, pursuant

5  to 11 U.S.C. §547(e)(1)(B),  a transfer "is perfected when a creditor on a simple contract cannot

6  acquire a judicial lien that is superior to the interest of the transferee."    According to <u>Barnhill</u>

7  <u>v. Johnson</u>, 503 U.S. 393, 397-98 (1992), "[w]hat constitutes a transfer and when it is complete

8  is a matter of federal law." (citing <u>McKenzie v. Irving Trust Co.</u>, 323 U.S. 365, 369-370 S.Ct.

9  405, 407-408, 89 L.Ed. 305).  The Bankruptcy Code defines "transfer" as "every mode, ...

10  absolute or conditional, ... of disposing of ... property or ... an interest in property." <u>Barnhill</u> at

11  397 (citing 11 U.S.C. § 101(54)).

12         If there is no definitive case defining when a particular transfer occurs or when

13  perfection is achieved under federal law, the Bankruptcy Courts may review applicable state law

14  to assist in the analysis.  <u>In re Eldercare Housing Foud.</u>, 205 B.R. 210, 212 (9th Cir. BAP 1996).

15  In the absence of any controlling federal law, "property" and "interest[s] in property" are

16  creatures of state law. <u>Id</u> at 398 (citing <u>McKenzie</u> at 370, 65; *See also* <u>Butner v. United States</u>,

17  440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Congress has generally left the

18  determination of property rights in the assets of a bankrupt's estate to state law").  The language

19  from these cases makes it clear that Courts are to use state law when determining the interest in

20  property and then turn to federal law to determine the effect of the transfer.  In the absence of

21  federal law on the subject, Bankruptcy Courts may use applicable state law as a guide.  The

22  parties do not disagree that Wyoming law is the applicable state law to resolve the issues in this

23  matter as to when the transfer was made or perfected and that there is no controlling federal law

24  to resolve the controversy.

25         Pursuant to Wyo. Rev. Stat. §1-15-212, "[a]n order of attachment binds the

26  property attached from the time the writ is executed."  Under Wyo. Rev. Stat. §1-15-425, a

27  garnishee is bound, "from the time he is served with the writ until the writ is discharged."  This

28  language indicates that once a garnishment is executed, it meets the requirements under

1  §547(e)(1)(B). If perfection has occurred upon the service of the writ, then the transfer has also

2  been made, for purposes of §547(e)(2)(A), at the same time, even if the creditor subsequently

3  transfers the property to the Court to discharge the writ.   Past Wyoming cases have supported

4  this analysis.  In the decision of <u>Platte County State Bank v. Frantz</u>, 239 P.531, 535 (Wyo. 1925),

5  the Court  stated that, "an order of attachment shall bind the property attached from the time of

6  service."  The Court in <u>United States v. Hunt</u>, 373 F.Supp. 1079, 1081 (D. Wyo. 1974) held that,

7  "[a] garnishment is virtually a process of attachment and under Wyoming law, a garnishee is

8  bound from the time of service.  It gives the creditor a paramount right, although not necessarily

9  title, to such property as a security for his demand."  <u>Id.</u> (internal citations omitted).  When

10  applying the case law to the issue before this Court, the critical transfer occurred, for §547

11  purposes, at the time that Wells Fargo was served with the Writ of Post-Judgment Garnishment

12  by Fowler.  There is no dispute that the Writ of Post-Judgment Garnishment was served upon

13  Wells Fargo on November 22, 2002.  At that point, Wells Fargo was required to hold the funds

14  subject to the Writ, and Fowler gained what might be described as a perfected interest in those

15  funds.  No other creditor which subsequently obtained a judgment on a contract could obtain a

16  judicial lien which would have priority over Fowler's interest in the funds.  Because of Fowler's

17  paramount interest in the funds held by Wells Fargo, the fact that Wells Fargo subsequently

18  transferred the funds to the Court to discharge the Writ does not affect the result.  In essence, the

19  transfer was made and perfected as of the issuance of the Writ.  Accordingly, pursuant to

20  §547(b), the transfer took place on November 22, 2002, outside the 90-day window of under

21  §547(b)(4)(A).  Since the Trustee is unable to show an essential element under §547 for which

22  he has the burden of proof, the Trustee's claim for a preference should be dismissed.

23         In support of his position, the Trustee urges the Court to consider <u>In re Strait</u>, 207

24  B.R. 217 (10th Cir. BAP 1997) and <u>In re Freedom Group</u>, 50 F.3d 408 (7th Cir. 1995).  After a

25  review of the cases, the Court concludes that they do not apply to the case at bar.

26         The Panel in <u>Strait,</u> interpreting the interplay between the Wyoming garnishment

27  statutes and the avoidance of a transfer under §547, held the transfer was avoidable even though

28  the garnishment occurred outside the 90-day window.  <u>Id.</u> at 225-27.  The <u>Strait</u> Panel

- 6 -

1    concluded that by employing the term "lien," rather than "ownership" or "title," the debtor

2    retained an interest in the property garnished. Id. at 226. Although the Panel acknowledged the

3    Hunt decision discussed *supra,* it held that the language relied on by this Court was simply dicta.

4    Strait. at 225-26. However, the Panel misses the point that whether the debtor retains some

5    residual interest in the property is irrelevant for §547(e)(1)(B) purposes. The question is whether

6    a creditor who obtains a judgment on a contract may defeat the rights of someone who obtains a

7    writ under Wyoming law and serves the writ on the garnishee before the creditor may act. The

8    point is that such subsequent creditor may not defeat the rights of the party who served the writ.

9    In this case, once Fowler served the Writ on Wells Fargo, Wells Fargo was required to hold the

10   funds subject to the perfected interest of Fowler, and no other creditor who obtained a judgment

11   could obtain an interest superior to Fowler in the funds.

12          The Strait Panel also acknowledged several previous decisions by other Courts in

13   which the other Courts held that a garnishment outside the 90-day window, with a payment

14   inside the window, did not constitute a basis to turnover the funds. However, the Panel

15   attempted to distinguish these rulings on the basis that:

16                  Although some of the opinions at least imply that the later payment
                    or judgment was not a transfer at all under 547, we believe these
17                  events were also transfers, *see* 11 U.S.C. §101(54), but were not
                    avoidable as preferences because they did not enable the creditors
18                  to receive more than they would have without them if the debtor
                    were liquidated in chapter7. *See* 11 U.S.C. §547(b)(5).
19

20   Id. at 226. This Court does not understand why the Panel believes that it has appropriately

21   distinguished the other authority, since §547(e) clearly delineates when a transfer has been

     perfected, and, hence, made. Relying on §101, the more general provision as to transfers, is not
22
     dispositive of the issues that a Court must face when a particular section of the Bankruptcy Code
23
     clearly defines what a Bankruptcy Court should rely on in interpreting the Section. If the
24
     transfer has been insulated from the Trustee's avoidance powers, a subsequent transfer consistent
25
     with the perfected interest of the creditor will not destroy the creditor's paramount interest in the
26
     property. Another way to analyze the matter is to consider Fowler as having a perfected security
27
     interest on certain property - the funds being held by Wells Fargo. If the property were
28

- 7 -

1    distributed in a Chapter 7 proceeding, the Trustee would be required to acknowledge  Fowler's

2    paramount interest in the funds.  Thus, Fowler would never receive more than he would in a

3    Chapter 7 proceeding, if somehow Wells Fargo had been unable to transfer  the funds to the

4    District Court in Wyoming pre-petition, because the Trustee would have obtained the funds, but

5    then been required to turn the funds over to Fowler because of the Writ that Fowler had served

6    on Wells Fargo.   Thus, the Trustee would have been unable to show that the transfer to the

7    District Court by Wells Fargo was within the parameters of §547(b)(5).   The Trustee has simply

8    failed to show that he has met all of the elements of §547(b).  This Court concludes that it shall

9    not follow the reasoning of the Panel in the Strait Decision.

10                    Although from the Seventh Circuit, the decision of the Freedom Group has a

11    similar logic to Strait.  In analyzing the interplay between Indiana law and §547,  the Court

12    acknowledged that under Indiana law, the lien was perfected, however, "perfection and transfer

13    are distinct concepts, as is plain from the provision of the Code ... on the timing of a preferential

14    transfer."  Id. at 411.  However, the Court fails to analyze §547(e) and (b)(5) in its analysis.

15    Additionally, it held that the order of garnishment was preliminary in nature, stating that, "for

16    purposes of determining whether the transfer is an avoidable preference, ....a final order of

17    garnishment or attachment [must be] issued."  Id. at 412.  However, there is nothing in the record

18    at this time that the parties have briefed and argued which would indicate to this Court that the

19    Writ served by Fowler on Wells Fargo was preliminary in nature.  Hence, the Decision is

20    inapplicable to the facts before this Court.

21                    Finally, this Court concludes that the decision in the Freedom Group case is

22    inconsistent with Ninth Circuit authority.  Under similar factual circumstances, the Court in In re

23    Power Systems, Inc. 841 F.2d 288 (9th Cir. 1988), held that:

24                    the creation of attachment lien by levy relates back to the date on
                     which the creditor obtained a temporary protective order covering
25                   the debtor's assets. Even though the levy occurs during the ninety
                     day preference period, such an attachment lien cannot be avoided
26                   by the Trustee as a preferential transfer or defeated by the
                     Trustee's strong-arm power.
27
      Id. at 290.  Under Ninth Circuit law, this Court should rely on the date the Writ was served upon
28

1  Wells Fargo, not the date that Wells Fargo turned the funds over to the District Court in

2  Wyoming.

3        This Court adopts the view set forth in the decisions of <u>Power Systems, Inc.</u> and

4  <u>Hunt</u> that certain actions taken by creditors pre-petition create paramount interests in the debtor's

5  property such that subsequent transfers consonant with those paramount interests are not subject

6  to avoidance under §547(b) as preferences.  This ruling is also consistent with the Supreme

7  Court's decisions of <u>Barnhill</u> and <u>Mckenzie</u>, which hold that interests in property are creatures of

8  state law.  In this case, Wyo. Rev. Stat. §1-15-212 and 425 clearly state that when Fowler served

9  the Writ on Wells Fargo, the requisite perfection occurred on that date.  Since the Writ was

10 served outside the 90-day window, the Trustee may not avoid the subsequent transfer of the

11 funds from Wells Fargo to the District Court in Wyoming.

12

13                                    **IV. CONCLUSION**

14        Based upon the foregoing, the Court concludes that Fowler's  Motion for Partial

15 Summary Judgment must be GRANTED, and the claim of the Trustee for a preference shall be

16 dismissed.  Fowler served the Writ on Wells Fargo on November 22, 2002, more than 90 days

17 preceding the filing of the Debtor's Chapter 7 petition.  Thereafter no creditor that obtained a

18 judgment lien on a contract could defeat the perfected interest of Fowler in the funds being held

19 by Wells Fargo.  The Trustee, therefore, is unable to show that the subsequent transfer from

20 Wells Fargo to the District Court may be avoided, since the essential element of §547(b)(4)

21 cannot be met by the Trustee.  This Court also concludes that the Trustee is unable to prove that

22 because of Fowler's perfected interest in the funds held by Wells Fargo, the transfer from Wells

23 Fargo to the District Court allowed Fowler to receive more than he would if the Trustee were to

24 make a distribution to Fowler in the Chapter 7 proceedings.  Thus, the Trustee has failed to show

25 that another essential element under §547(b)(5) has been met.

26        The Court shall execute a separate order granting Fowler's Motion for Partial

27 Summary Judgment.

28

1    DATED this 6th day of September, 2005.

2

3                                        _Sarah Sharer Curley_

4                                        Honorable Sarah Sharer Curley
                                         U. S. Bankruptcy Judge
5

6
     BNC TO NOTICE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28